## McKELVY v. CAPITOL AMUSEMENT CO., Inc., et al.
### No. 4835.

Court of Appeal of Louisiana.
Second Circuit.
Feb. 5, 1935.

T. Qverton Brooks, of Shreveport, for appellant.

Wilkinson, Lewis & Wilkinson, Lyons & Prentiss, and Edward S. Klein, all of Shreveport, for appellees.

MILLS, Judge.

The plaintiff, a paying patron attending a motion picture performance in the Capitol Theatre in the city of Shreveport, owned and operated by defendant company, is suing the company and its insurer for injuries sustained in a fall in said theater.

The facts alleged are: That plaintiff purchased a ticket, climbed a stairway to the balcony and occupied a seat there; that some time later she went to the ladies' dressing room in the balcony, ascended the steps leading thereto and entered.

"Petitioner shows that after being in said dressing room several minutes, she left same; that immediately after leaving the said Ladies' Dressing Room, she paused for some time just outside the doorway for the purpose of gaining her bearings so that she might safely return to the seat which she had been occupying in said balcony; that your petitioner took several steps forward and fell down the stairway and elevated portion of said balcony leading from the top of said balcony and from the said Ladies' Dressing Room to that portion of the balcony where was located your petitioner's seat.

"Your petitioner shows she fell one or more steps and finally landed upon the rear of a tier of seats in the back portion of said balcony. * * *

"Your petitioner shows that at the time your petitioner gained entrance into said theatre, said balcony was dark and improperly lighted; that in fact said balcony was maintained at said time by defendant, Capitol Amusement Company, Inc., in such a darkened condition that it was impossible for petitioner, or any other patron of said theatre, to make their way from the seats provided for patrons to the place provided by the said theatre as the Ladies' Dressing Room for the use of patrons; that no light whatsoever was maintained by said defendant in the neighborhood of said dressing room; that there were no floor or footlights along the aisle leading from said dressing room to petitioner's seat or along that portion of the balcony where the floor elevation drops; and said aisle was the normal and natural way as provided by said theatre by which your petitioner must have returned to her seat.

"That the floor of said aisle leading from the said Ladies' Dressing Room in said balcony to petitioner's seat was broken in a number of places by steps spaced at irregular intervals leading from the upper part of said balcony; namely, from that portion where is located the Ladies' Dressing Room to the part of said balcony; namely, where your petitioner's seat was located; and that in order that petitioner regain her seat after leaving said dressing room, it was necessary that she descend said stairway in said aisle.

"That said stairway was not lighted in any manner whatsoever; and that although petitioner knew that said stairway was located in said aisle, and although petitioner paused for sometime before the doorway to said Ladies' Dressing Room, said balcony was in such a darkened condition that it was impossible for petitioner to locate the steps in said aisleway.

"That there were no other visible signs in said balcony or along said aisleway to guide or aid your petitioner; that there was no rail or other safe guard along said aisleway which might have assisted your petitioner; that there were no ushers or other persons provided in said balcony for the purpose of escorting your petitioner to the said Ladies' Dressing Room or in aiding her to safely return to said seats provided by said theatre for the use of its patrons and especially for the use of your petitioner. * * *

"That your petitioner was not familiar with the general arrangement of the balcony of said theatre and was not familiar with the different floor levels and with the irregularities of said floor and that being unfamiliar with same she moved about in said balcony with extreme care and caution in an effort to prevent the said accident.

"That as a result of all of said injuries, said petitioner is now forced to use a crutch constantly and moves about only with extreme difficulty and pain; that all of said injuries and damages are the direct and proximate result of said accident and of the negligence of defendant, the Capitol Amusement Company, Inc., in failing to maintain said balcony in a properly lighted condition and in failing to maintain said stairway leading down the aisle from said Ladies' Dressing Room to petitioner's seat in a properly lighted

---

condition so that your petitioner and other guests might use said aisleway without seriously endangering themselves in doing so; that said accident and the resulting injury and damages are the direct result of the negligence of defendant in failing to maintain a guard-rail, or other safeguard along said stairway in said balcony; and that said injuries and damages are the direct result of the failure of defendant, the Capitol Amusement Company, Inc., to place ushers or other attendants in such places along the course which your petitioner was compelled to follow leading from said Dressing Room so as to aid petitioner in regaining her seat."

Plaintiff is appealing from a judgment sustaining an exception of no cause of action.

The acts of negligence relied upon are:

(1) Failure "to maintain said balcony in a properly lighted condition."

(2) Failure "to maintain said stairway leading down the aisle from said ladies' dressing room to petitioner's seat in a properly lighted condition so that petitioner and other guests might use said aisleway without seriously endangering themselves in doing so."

(3) Failure "to maintain a guard rail, or other safeguard along said stairway."

(4) Failure to place ushers or other attendants in such places along the course which your petitioner was compelled to follow leading from said dressing room so as to aid petitioner in regaining her seat.

The effect of the allegation that the balcony was so improperly lighted that it was impossible for petitioner to make her way from the seats to the dressing room is destroyed in the petition itself, which shows that plaintiff came into the theater, ascended the stairway leading to the balcony, and found a vacant seat without trouble. That she later left this seat, walked up the aisle, mounted the steps leading to the dressing room, and entered it without mishap.

The same applies to the lighting of the stairs. Petitioner located them on her way to the dressing room. She knew they were in the aisle. She says that "she paused for some time just outside the doorway for the purpose of gaining her bearings so that she might safely return to the seat." She does not say that she did not see the steps. We must assume that she did, for she alleges that she "took several steps forward and fell down the stairway."

Beyond the allegation that she fell one or more steps, we are not informed as to the length of the stairway. There is no apparent necessity for a handrail along a stairway of two or three steps. It would not be practicable to install guard rails along the ater aisles, as they would block access to the seats. Furthermore, the petition does not disclose wherein the absence of a handrail contributed to the accident.

She complains that there were no ushers to escort her. We are aware that sometimes ushers are furnished in theaters to conduct patrons to their seats, but we have never observed them engaged in conducting ladies to and from the dressing room.

Operators of theaters are not insurers of their patrons. They are required only to be free from negligence. They must take reasonable precautions to prevent injury, but are not required to guard against something that may happen unless the happening appears likely.

There are two cases in our jurisprudence which amply justify the action of the lower court.

In Givens v. DeSoto Building Co., et al., 156 La. 377, 100 So. 534, it is held that moving pictures, of necessity, must be shown in semidarkness, and that defendant company was not negligent in placing the balcony seats on a platform eight inches above the aisle or in failing to light the floor at the point where the change in level occurred. The court said further that motion picture theaters are never so dark that one may not see persons and objects which become quite distinct after a while spent in the semidarkness; that after such a time there is no reason why patrons cannot see the floor on which they walk, and no reason for the proprietor to suppose that they cannot. The fact is dwelt upon that plaintiff, having found her way to, and safely mounted, the platform, should have seen the step down when leaving had she been looking.

In Suggs v. Saenger Theatres, Inc., 15 La. App. 142, 130 So. 817, recovery was denied plaintiff, who fell over the 4-inch raised platform containing the seats. In that case the negligence alleged consisted of: (1) Maintaining the inclined floor and elevated seat platform. (2) Failing to furnish an usher. (3) Failing to provide lights sufficient to disclose the platform step or give notice of its presence.

In sustaining an exception of no cause of action, the court followed the Givens Case, and held that, there being sufficient light for plaintiff to find her way along the aisle, she should have discovered the step and not assumed that the floor was level.

146

■ Though counsel for plaintiff has prepared a thorough and able brief, citing many cases from other states, the facts being so markedly similar, we are constrained to follow the two above decisions of our own courts.

The judgment appealed from is accordingly affirmed.