Verda Ross WHALEN, Appellant,

v.

PHOENIX INDEMNITY COMPANY, Appellee.

No. 15279.

United States Court of Appeals Fifth Circuit.

May 4, 1955.

Whitfield Jack, Shreveport, La., for appellant.

Vernon W. Woods, Shreveport, La., for appellee.

Before HOLMES, RIVES and TUTTLE, Circuit Judges.

TUTTLE, Circuit Judge.

Petitioner says that we erroneously applied the Louisiana law to the decision of this case, in three respects: (1) In order to invoke res ipsa loquitur against the owner of a self-service store, if the plaintiff shows that a customer created the condition causing the harm, he must necessarily prove also that the store owner had actual knowledge of the condition, or that the condition existed for a sufficient time to charge the owner with constructive notice of it; (2) The doctrine of res ipsa loquitur may not be applied when control of the instrumentality causing damage is partially in the plaintiff, unless he shows absence from fault *and that the instrumentality is in a sealed container*; and (3) Because Mrs. Whalen had a contractual duty to replace the rugs, breached that duty, and the breach was a cause contributing to her injury, she was guilty of contributory negligence as a matter of law.

1. We said in our original opinion that from the evidence considered in the light most favorable to appellant, it could be inferred that the manager, a customer, the stockroom clerk, or another saleslady had created the dangerous condition. It was not shown that any of the employees had actual notice of the condition, or that it had existed for any certain time placing the management on constructive notice. Petitioner says that under Louisiana law it *cannot* be inferred that the store owner was at fault without this proof of actual or constructive notice, citing three Louisiana Court of Appeals cases. Peters v. Great Atlantic & P. Tea Co., La.App., 72 So.2d 562; Ellington v. Walgreen Louisiana Co., La.App., 38 So.2d 177; and Boucher v. Paramount-Richards Theatres, Inc., La.App., 30 So.2d 211. The same point was touched upon in Petitioner's original

brief, where it cited as authority for this proposition Daniels v. United States Casualty Co., D.C.W.D.La., 103 F.Supp. 742, 744.

These cases were from lower courts and all dealt with the liabilities to business invitees, that is customers or patrons. However, we recognize that there is some cogency in Petitioner's argument, that our opinion did not set the matter at rest, and that the rather superficial distinction that this case involved an employee rather than a customer is not an altogether satisfactory answer to the argument.

But we think it clear and most significant that the cases Petitioner cites were not truly res ipsa loquitur cases as the present case is. Since Louisiana appellate courts review factual findings, we must view their opinions with particular care in order to determine if the ground assigned for reversal was not a factual matter with respect to which we have no power to disturb a jury's verdict. The Daniels case simply held that a complaint sufficiently stated a claim under the Federal Civil Rules, 28 U.S.C.A. and Louisiana substantive law, when it alleged that defendant's insured (a barkeep) allowed " 'wax, water and other substances to accumulate on the floor so as to make slippery spots' " and that he permitted this " 'dangerously slippery condition to remain on a floor used by his business guests.' " We see no inconsistency between this case and our holding. What the Daniels case said concerning the necessity of proving actual or constructive notice of the condition to the proprietor was not necessary to the holding, since that same result would have been reached the other way.

In the Ellington case [38 So.2d 180], the court reappraised the evidence and reversed a judgment for defendant. The evidence relied upon for reversal was the testimony of a soda dispenser that she saw the bottle of baby oil broken approximately fifteen minutes before plaintiff slipped and fell, and the store manager's extrajudicial admission that an employee had been ordered to clean up but had only picked up the glass although he had time enough to clean up the oil also. The court did not say notice of the condition is essential to applying res ipsa loquitur, in fact it did not refer to that doctrine, but simply said:

"We recognize the principle of law that the proprietor of a store is not responsible for what may occur to one customer as the result of the negligence of another customer. However, if a storekeeper or his employees have knowledge of the existence of a dangerous condition of a portion of the store in which customers are invited to use, whether same be created by an act of another customer or arise from other circumstances, and neglect to exercise reasonable diligence in remedying the dangerous situation—by a clean up, repair or by barricading same—the storekeeper thereby becomes guilty of negligence and becomes responsible for injuries that may result to one entering his premises as a customer."

The court did not say that in an appropriate case liability may not be predicated on knowledge of a general practice leading to recurring dangers, without notice of the specific occurrence of a dangerous condition which caused the injury. There was proof in this case that the store manager had notice of the general practice.[1]

In the Boucher case, the court said, 30 So.2d at page 217:

"In the present case there is no evidence indicating that any of the employees of the Saenger Theatre were at fault, nor has it been shown

---

1. The store manager testified on direct examination:

"Q. Mr. Brightwell, if a customer wanted to see one of these rugs * * * that was located three or four rugs back from the outside, what normally would have been the process to demonstrate that rug to the prospective purchaser? A. To take the front ones out and lean them against this wall here, or to roll

that the popcorn was on the floor a sufficient length of time to charge Paramount-Richards Theatres, Inc., with notice of its presence so that their failure to remove it would constitute negligence for which the plaintiff should have the right to recover. The burden of making such showing was with the plaintiff. The operator of the theatre appears to have used reasonable care to keep its premises in safe condition, and the law requires of it nothing beyond that. The testimony shows that it had a complement of several porters and maids whose duties it was to walk through the arcade every ten minutes or so and pick up any trash, cigarette butts or debris which was found to be on the floors, and no evidence can be pointed to in the record evincing that anything other than reasonable care was used by the management of the theatre to keep its premises in a condition of safety."

Thus it appears that the court's reasoning was in effect to find as a fact that the theatre company had notice of the general practice of patrons' dropping trash on the floors, and took reasonably prudent precautions to prevent harm to others which might otherwise result; but there being no notice of the specific instance of spilled popcorn, it had no additional duty of care.

 In the present case, although there was proof that Mrs. Whalen herself had some duty to replace the rugs in the racks, there was no proof that she or anyone else was charged with *regularly* or *systematically* doing this. Nor was there any proof that she should do this

instead of waiting on customers. From this the jury could have found the store owner breached the duty it owed to persons likely to be injured, resulting from his knowledge of the general or recurring practice of leaving the rugs leaning against the wall. The Boucher case does not impose any rigid requirement that the plaintiff in such cases must prove there was notice of the specific danger in order to recover.

Neither does the Peters case. Of this case Petitioner says:

"Certainly it was foreseeable that customers in a super market will drop vegetables on the floor, yet the Louisiana Court specifically refused to impose liability in the absence of proof of knowledge of the condition in the storekeeper or that the condition had remained long enough to impute knowledge."

But this statement distorts the Peters case, we think. The court did not say the foreseeability that customers will drop vegetables imposes no duty of care on the storekeeper; on the contrary, it evidently recognized such a duty, held that it was not breached, and found that there was no further duty imposed there because of failure to prove specific notice.

The rule contended for by Petitioner taken to its logical conclusion would mean that a storekeeper well aware of careless general practices in his store constituting recurring dangers to the safety of others, and who did nothing to correct those practices, would not be liable for a foreseeable injury resulting from this failure to exercise care, if the injury happened to result from a condition of which he or his agents were not specifically notified or which had not existed some con-

---

them on the end over to the wall and show them whatever rug they wanted to see.

"Q. Did you ever see that done in that store? A. Yes, sir.

"Q. Very often? A. Yes, sir.

"Q. This is in the nature of a self service store, isn't it? A. Yes, sir.

"Q. Have you ever seen customers go

back to the linoleum rugs and examine them without a sales person being present? A. Yes, sir.

"Q. Have you ever seen customers move the rugs out of the rack? A. Yes, sir.

"Q. Do these customers always replace the rugs when they take them out of the rack? A. No, sir."

siderable period of time sufficient to constitute constructive notice of the particular condition. A result more incongruous with principles of fault liability in Louisiana or elsewhere is difficult to imagine; the rule urged on us by Petitioner then cannot be correct.

■ We conclude that there is nothing in legal principle or the cases cited which conflicts with our holding that there was evidence from which the jury in the present case could find that petitioner's insured had a duty of care resulting from his knowledge of the general practice of customers' leaving the rugs out of their racks, and breached this duty by failing to provide a regular and systematic method of restoring them.

■■ 2. Petitioner's insistence that the Louisiana courts apply res ipsa loquitur in divided control cases only where the instrumentality is in a sealed container is not a true appraisal of the case authorities. The exploding bottle cases may involve instrumentalities actually in sealed containers, but Hake v. Air Reduction Sales Co., 210 La. 810, 28 So.2d 441, and Plunkett v. United Electric Service, 214 La. 145, 36 So.2d 704, 3 A.L.R.2d 1437, are not really such cases. In the Hake case, the acetylene was in a sealed cylinder, but no one contended there was any defect in the acetylene. The *instrumentality* was perhaps a defective fuse plug, according to Hake's version, or perhaps the leaving of a lighted acetylene torch in proximity to the cylinder, according to the Air Reduction Sales Company's version. The fuse plug was not, strictly speaking, in a sealed container, and certainly the torch was not. In the Plunkett case, the instrumentality was found to be a gas heating unit. Certainly this was not in a sealed container, because there were controls which plaintiffs might have tampered with and which might have caused the fire, without the opening of any container. In these cases the court held res ipsa loquitur applicable, even where there was no exclusive control in the defendants and even though, as we see it, the instrumentali-

ties were not shown to be in sealed containers. We see no true distinction between the present case and the Hake and Plunkett cases. Nothing in the language used in Dorman v. T. Smith & Son, Inc., 223 La. 29, 64 So.2d 833, dissuades us from this view. The situation there was not such as to require the court to come to grips with the problem here, where the jury found as a fact from sufficient evidence that plaintiff was not negligent. That there was no such finding in Dorman well explains the result there. In short, it seems that in Louisiana res ipsa loquitur applies only (1) where exclusive control is in the defendant, or (2) where there is divided control *and* plaintiff is found free from fault. Since (2) was clearly not applicable in the Dorman case, it is understandable why the court considered only the exclusive control criterion and spoke of it as if it were the only one. That the omission of the other half of the rule was inadvertent is clear because the court did not even refer to the exploding bottle cases, where it was long since decided that exclusive control was unnecessary. In our opinion, this other half of the rule has been extended by Hake and Plunkett to the generality of negligence cases, including this one.

■■ 3. It is true that Mrs. Whalen may have breached a duty of her employment, although her duty in this respect was not clearly spelled out. It does not follow, however, that she was contributorily negligent, and the jury found on sufficient evidence that she was not. Not every breach of contract constitutes a basis of tort liability or a defense of contributory negligence. The contractual duty, even when clear, and the resulting duty of care may not be coextensive; breach of the former may not constitute a breach of the latter or a defense of contributory negligence. 38 Am.Jur., "Negligence" § 20; 65 C.J.S., Negligence § 4 (3); Prosser, Torts 201–205. Although we have found no Louisiana cases on the point, we do not doubt that the Louisiana law, derived as it is from Louisiana Statutes Annotated—Civil Code, art. 2315, is

the same. It appears, then, that the jury could find that Mrs. Whalen was not contributorily negligent, even if she had breached her contract.

The petition must therefore be denied.